Our fourth argument of the morning is in two consolidated appeals, numbers 2513.11 and 2513.92, Reginald Chapman v. Eileen O'Neill Burke. Mr. Schuman, nice to see you. Nice to see you as well. May it please the court, William Schuman, pro bono counsel, appointed by Judge Aspen, representing the plaintiff appellant and cross appellee, Reginald Chapman. Chapman's claims are brought pursuant to section 1983, alleging that the Illinois post-trial DNA testing statute is facially unconstitutional. The district court erred when it found that it had no jurisdiction based on Rooker-Feldman. On this appeal, first we explain that Rooker-Feldman does not bar federal jurisdiction of Chapman's claims and that decision should be reversed. Next, we ask the court to address right now the unconstitutionality of the Illinois statute rather than remand the issue for further proceedings in the lower court. The state's attorney has agreed in the cross appeal that you should look at this language, quote, here and now. Chapman was convicted, we believe wrongly, for two murders. He's been in prison since 1994. He's been seeking DNA testing of evidence under the Illinois statute for many years. Many key items were never tested. Many others were tested based on technology that an independent expert in the record has described as no longer reliable, used miserable methods, and was useless. The state court judge in 2018, Sue Esponte, denied Chapman's motion for DNA testing based on this unconstitutional statute. Even though the state's attorney had agreed to the testing that Chapman requested. The state's attorney on this appeal continues to say, and I'm quoting, the state's attorney and Chapman are in a radical agreement that Chapman should have received the DNA testing on the items for which he requested testing. And that agreement stands to this day. I have some questions of your adversary on the other side about that. Mr. Schuman, when you received their brief saying we're in radical agreement, why didn't you make a telephone call? Maybe you didn't say do the testing. Your Honor, though it is not part of a court record, when I got this case and I studied the record and I read every one of these decisions and I called the state's attorney and I asked them, would you agree? They were cordial, but they said no. That's where we were. I don't understand this because they say, well, we'll see what Mr. Brenner says in a few minutes about this. It's not their issue. They said no. No, you tried. I understand. The court's review of Judge Cummings' decision on jurisdiction is de novo under Andrade. Chapman is not seeking reversal of the trial court's analysis of the statute. Not the language of the statute, not the law, not the substance. Chapman is attacking the facial unconstitutionality of provisions that make no sense and cannot be understood or enforced as written. We cited, obviously, Gilbank, which says that a narrow reading and application of Rooker-Feldman is required. All of the Supreme Court decisions that address this issue have ruled effectively in favor of Chapman on this issue. Is Chapman challenging the entirety of that statute as unconstitutional or just that portion about identity? Just that portion about identity. All right. Now, can the statute survive if that portion about identity is severed? It can. It cannot? No, no, no. It can survive. It should survive. We should not be lost in a malaise of what do we do now. You can take out the language. There are several requirements in the statute in addition to this one. None of them are being contested. All of them were demonstrated in the complaint and not contested by the state's attorney. And so as Chapman understands the state court's ruling here, the state court's ruling seems to be about the rest of the statute, not the identity portion. It seems to be saying, you know, the evidence against Chapman was overwhelming, so any further testing would not have changed the outcome because we've got that lower portion of the statute that says, you know, some indications that, you know, this assertion of actual innocence. And that actually, Your Honor, is really our point. The court, you're completely right. The trial court in 2018, when there was a motion pending, agreed to by the state's attorney to have the testing done that Chapman had asked for, and the court says, well, the evidence was overwhelming against him. Well, where's that in the statute? It's nowhere. They're not allowed to make that. And I'm not, and if you said, well, okay, it's overwhelming, and now I'm challenging that, and so that's as applied. And what's important is this is not as applied. What we're pointing out is that when it says, when the court says evidence is overwhelming, that's a function of the fact that you can't figure the statute out. The means the. It says the issue that was dispositive, in effect, in the minds of all 12 jurors. Now, we can look at each other and say, that's ridiculous. But that's what it says. That's what the courts have been obliged to follow. That's what the courts have been unable to follow, and nobody, and I shouldn't say nobody, in the cases that were cited. So you're saying it would not be a fair reading of that 2018 decision to read the court's language about the evidence would be overwhelming, testing, as talking about the C1 language. You are 100% correct. The trial court's job, according to the statute, is to decide whether the jury thought that identity was the interest, the issue that was dispositive of guilt, the issue. Now, all the courts look at that, and they say, how can we possibly know? By the way, they cannot. And so case after case, instead of the issue, Grant says an issue. Heckenberry, an issue. Uroste, the issue, does not mean the only issue. Johnson, central issue. Harper, the means A. Savory, identity is an issue. The state's attorney says, oh, the test should be the central issue. That's not in the statute. How is a judge 20 years after a trial going to be able to tell whether it was the central issue or the issue in the jurors' minds? It cannot be done. It's the fault of the legislature. It is the fault of the statute. And it's unconstitutional, because you can't get due process in that context. And all the cases cited by everybody demonstrates. Mr. Schuman, earlier you said that you want us to reverse and revand, or you want the merits issue taken up, right? We do. If there's error on the Rooker-Feldman. OK. If we agree with you on Rooker-Feldman, OK, before you get to merits, I think there's an issue that has to be resolved vis-a-vis claim preclusion. Do you recommend we resolve that, or do you recommend that the district court resolve that? I recommend you resolve it. I think the record is clear. I think you don't need any further help from the district court. Whether it's discovery or further briefing, this has been briefed in detail. Mr. Chapman has been in jail for 32 years. I think you ruling right now would be merciful, and I don't think there's any inhibition on your ability to do so. OK. You want to save your remaining time? Please. OK. Very well. OK, Mr. Brenner, nice to see you whenever you're ready.  Good morning, and may it please the court. The dismissal of Mr. Chapman's complaint should be affirmed for two reasons. The first reason is jurisdictional. This court lacks subject matter jurisdiction over the complaint. Mr. Chapman lacks Article III standing to sue the Cook County State's Attorney because the State's Attorney did not cause his injury. Unlike in Reed and Gutierrez, the State's Attorney signed an agreed motion to allow the DNA testing that was presented to the Cook County Court, and the Cook County Court sua sponte denied that motion. Well, it wasn't exactly sua sponte in letter, but the State's Attorney is there in the transcript saying, you know, you can dismiss this case, Your Honor. That's correct, Judge, and I think the motion speaks for itself, that the State's Attorney's office, or the State's Attorney walked into court with this agreed motion and presented it to the court and said, Judge, we think that you should award this DNA testing, and the judge, exercising his own authority, denied that motion even though the State's Attorney was presenting that it should have been granted. Here's what I don't understand about this. Why don't you just do the DNA testing? If the parties are in such agreement, why don't you just go get the evidence and do it? So there's two responses to that. The first is that it's not alleged in the complaint that we are in physical possession of the evidence. Do you have access to it? Forget the complaint. Do you have access to it? The complaint says that we are the custodians of the evidence, and whether we have access to it, I don't believe that to be true. Well, look, here's the issue. Between the State's Attorney and the Cook County judge, the more likely custodian of the evidence is the State's Attorney. The State's Attorney is the executive arm of the prosecution. It would shock me if the Cook County State Judge had custody of the evidence. And so why can't you, if you don't have custody of it, whoever does have custody, police department, can't you access it and just do the testing? Well, I think that that brings me to the second point that I want to raise, which is that the Circuit Court of Cook County has already spoken on this and said no. And so the State's Attorney is not in the position to simply go around the order of the Circuit Court and say that order is something that we are not going to give effect to. It's not the case that the State's Attorney is. So step outside of this case. If in a case of, you know, the State versus John Doe, and there's a question about identity, who committed the crime, et cetera, do you have to go to the court to get an order to do DNA testing? That's our position, Your Honor. That is the reason that the statute exists. At the investigative stage of cases, you have to go get court orders to do DNA testing? Well, keep in mind that the DNA testing statute is a post-trial statute. It's retroactive looking. So we're not at the investigative stage in terms of preparing for trial. So your point is post-conviction, the statute doesn't say that, that it's unlawful to engage in DNA testing? I would not say it's unlawful. Well, what's the prohibition then? Your point is well taken, Your Honor. The prohibition in this case is that there is already an order in place saying the DNA testing request is denied. Yeah, it's denied to the extent that Mr. Chapman invoked the statute and filed a motion under it. But does anything in that court order say the State's attorney is precluded by agreement? The order does not say that, Your Honor. Yeah, I just, I really, I don't understand this. I mean, you come in and you say there's no Article III standing. We're in complete agreement that the DNA testing should be done. And I would say, well, then go do it. We are bound by the court's order. Where does the court, can you point me to where the court says you're precluded by way of agreement from doing the DNA testing? The court did not say we are precluded from doing it. The court said that the request for DNA testing is denied because of the overwhelming evidence of Mr. Chapman's guilt. And I think, Judge Jackson, your point is well taken, that the challenge seems to be more directed to the Section C-1 portion of the statute, which is about whether or not the evidence would materially advance Mr. Chapman's claims of actual innocence. And it appears that that is the direction that the Cook County judge went, as opposed to really grappling with the question for this court, which is the constitutionality of the identity section of the statute. Before the hearing, before the Cook County court decided the issue, could you have made a telephone call to Mr. Schuman and said, withdraw your motion. It's not necessary. We agree to the testing. We'll do it. We'll send you the results. Before the hearing, before the Cook County court. Right. When you saw his motion, you could have called him up and said, put the motion on ice. We agree with you. Testing should be done. We'll get it done. We'll send you a copy of the report. I think hypothetically, yes, Judge. I don't know. What does hypothetically mean? Well, of course, we know what happened. So, yes, I think that that's fair. It troubles me that you say we're in agreement. It would shock me if your client does not have access to evidence. That would be stunning, because then I would wonder who has it. I appreciate that, Your Honor. Not only to say we're in agreement, but then to go into court and say we're in agreement, and then in the same breath tell the judge, but, you know, you could just dismiss this motion that we're agreeing to without also saying you could dismiss it because we're going to take care of this informally and grant the testing. So it's giving with one hand, taking with the other right in the court. And I think that the agreed motion makes the intent of the state's attorney clear. No, I think the statement to the judge saying the exact opposite makes the lack of clear intent clear, to use the word clear twice. Your Honor, I disagree with your perspective. Walking into court with an agreed motion saying we are asking jointly with Mr. Chapman to award the DNA testing that he seeks is the clearest evidence of the state's attorney's intent. Well, what do you do about the statement that Judge Jackson-Kimey's focused on in your next breath? You say, Judge, you can deny the motion. As opposed to saying, Judge, we can make this real easy. There's nothing to decide. The parties agree the testing should be done. We'll let you move on to your next case. There's no dispute here. There's no adversity. Because that would still take away from the court its authority to look at the motion and determine whether in the court's independent judgment that DNA testing should be awarded, which, of course, is what the court did, and exercised its independent judgment and said, no, in this case, DNA testing is not appropriate because of the overwhelming evidence against Mr. Chapman. The only way that position can possibly be correct is if your client believes that you would act illegally to jointly agree on DNA testing post-conviction. And my question would then be, where do you see that in the statute? I don't see that in the statute, Your Honor. So have you turned over the evidence? I'm sorry, I couldn't hear you. Has the evidence been turned over? No, Your Honor. In the sense, I'm sorry, to Judge Scudder's question as to who has possession, you indicated what the complaint said. And so as far as custody, are you able to represent who is? I am not, Your Honor. Regardless of the jurisdictional issues, Mr. Chapman's complaint should be dismissed on the merits, both because his claims are barred by claim proclusion. So I just want to make sure I understand. So on the standing issue, the argument is that because the state does not have custody of the evidence that there's no standing? I'm trying to follow. The standing argument is that the state's attorney is not the cause of Mr. Chapman's injury, which we acknowledge is the denial of the DNA testing. I think Reid and Gutierrez are very clear about that. But the state's attorney did not cause that injury because the state's attorney was prepared to agree to allow that testing. So I don't understand that. Is that suggestion, then, that the named defendant should be the Cook County judge? Well, that would, of course, cause a Rooker-Feldman problem, which we already believe exists. Well, it would cause an absolute immunity problem is what it would cause. It has nothing to do with Rooker-Feldman. Your Honor, it's not to say. Obviously, Mr. Chapman has not presented that theory. In fact, in his briefing, he made clear that he would not and could not do so. We're not taking the position that he should have sued a Cook County judge. Our position is simply that because we did not cause the injury, because we were in agreement to provide the DNA testing. You kind of set the ball in motion, though, because the judge had before the judge an agreed motion. And then the state's attorney said, but you could go ahead and deny it. And, Judge, that's correct. But our position remains that the agreed motion, which was sua sponte denied, is the representation of the state's attorney's position, both then and also as we stand here today, that the state's attorney did not and does not oppose the DNA testing itself, but instead. So here's what's interesting about that. You're not asking us to stay the appeal. So what I thought, if did not and does not oppose, I thought you might say stay the appeal, Seventh Circuit, because we're in agreement that DNA testing should be done. The wheels are turning on that, and when we get the results back, we'll send Mr. Schuman the report. We don't know. It's being done. Unless your position is that you can't do that now by agreement because you'd act illegally. That's what I'm hearing this morning. I would disagree, Your Honor. I think our position is that, for various reasons, the court does not have jurisdiction to enter that order, and also that Mr. Chapman's theory relies on. We're not talking about entering an order. No. We're talking about you making a phone call to Mr. Schuman saying, hey, we can get the evidence. We can get in touch with the lab. We'll get the testing done. We'll send you the results. And that would still require the state's attorney to then make an end run around the circuit court of Cook County. So it's your position that you are unable to test the evidence because of the court's order? That it would be expressly going against the opinion of the Cook County judge who determined and denied this DNA testing. So is that a yes or a no? No, it is not illegal, Your Honor. We would not be unable to do that. Would it be a violation of the court's order for you to do it? I don't believe so, Judge. Okay. If there are no further questions, we ask the court to affirm or modify the ruling to dismissal with prejudice on the merits. Okay. Very well, Mr. Brenner. Mr. Schuman, anything you'd like to close with? Very, very briefly. Two points. Obviously, on this standing issue, they claim don't sue the state's attorney, even though they're supposed to have the evidence because they're not the reason we're here. That would leave parties remedialists. And, in fact, Gutierrez said that's false. Gutierrez says you sue the state's attorney that presumably at least is in control of the evidence. The second thing I would ask. At a minimum would have access to it. For sure. For sure. I mean, it seems impossible to me, like as impossible as impossible can be, that the Cook County judge would have custody of criminal evidence. And this is not in the record, but it's not supposed to be the judge holding the evidence in 20,000 cases over the course of his career. It's the state's attorney, and they've got buildings, and they've got files, and they might say we can't find it, but they can't say we don't know what was done with it. Warehouse is full of this stuff. Yes. Yes. And so the last thing I would say is just really for clarity. We'd like the court to reverse on Rooker-Feldman and find it has jurisdiction. We would like the court to take on the language and to rule that the statute is unconstitutional. That allows us to proceed, and it's the right thing to do. And irrespective of the, I don't want to end up in an abyss some months later when it's unclear what they need to do to fulfill this court's order, which brings me to my very last point is please write your order clear enough so that they know what they're required to do. We want access to the DNA evidence. We want to be able to test it and relate it to whatever issues we need to do to get there. And so what we ask this court is to please be clear as to exactly what the remedy is, given the nature of the statute and the opposition of the state's attorney. Thank you very much. Mr. Schuman, you're quite welcome. I don't know if you accepted an appointment in our court or not, but I know you did in the district court. I did. You have our thanks for doing that and for representing Mr. Chapman, whether on appeal or on appointment or otherwise, here today. Mr. Brenner, thanks to you and your colleagues. As well, we'll take the appeal under advisement. And thank you for your kind words.